**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-30342
Summary Calendar
_____


SHYRL PATTERSON BAGNERIS,

                              Plaintiff-Appellant,

VERSUS

ORLEANS INDIGENT DEFENDERS PROGRAM; DOUGLAS WILSON;
FRANK G DESALVO; JAMES C LAWRENCE; WILLIAM O'HARA;
and JOHN BLANCHARD,
Individually and in Their Capacity as Members of the
Board of Directors of the Orleans Indigent Defender Program;
and
NUMA BERTEL,
Individually and in His Capacity as Director of the
Orleans Indigent Defender Program,

                              Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(93-CV-1521)
_____

December 18, 1996

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


        Shyrl Bagneris appeals a jury verdict in favor of the Orleans

---

        [*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited circumstances
set forth in 5TH CIR. R. 47.5.4.

Indigent Defender Program ("OIDP"), Douglas Wilson, Frank DeSalvo, James Lawrence, William O'Hara, John Blanchard, and Numa Bertel (collectively, the "defendants") on her claims that the defendants' policy of requiring employees seeking election to office either to resign or take an unpaid leave of absence violates the First and Fourteenth Amendments.  Finding no error, we affirm.

## I.

Pursuant to the subject policy, Bagneris, a staff attorney with the OIDP who handles motions and trials in the Criminal District Court for the Parish of Orleans, was placed on unpaid administrative leave during her ultimately unsuccessful 1992 run for an elected judicial position in Orleans Parish.  Among the proffered justifications for the OIDP policy was the OIDP's desire to avoid the additional costs of hiring substitute counsel to cover responsibilities to OIDP clients and to the courts neglected by campaigning employees.

Bagneris challenged the OIDP policy, alleging that it infringed impermissibly upon her rights of freedom of speech and association and denied her equal protection of the laws.  Bagneris alleged additionally that the policy was discriminatory in its selective application against women.  A jury rejected each of Bagneris's claims.

## II.

2

We will not set aside a jury verdict on evidentiary grounds unless it is against the great weight, not merely the preponderance, of the evidence. *See Pagan v. Shoney's, Inc.*, 931 F.2d 334, 336 (5th Cir. 1991). We review all evidence in the light most favorable to the verdict and will affirm unless the evidence points "so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Whatley v. Armstrong World Indus.*, 861 F.2d 837, 839 (5th Cir. 1988). We accept all credibility inferences that tend to support the verdict. *See United States v. Gallo*, 927 F.2d 815, 820 (5th Cir. 1991).

A.

Bagneris first alleges that the jury concluded incorrectly that the OIDP policy did not impermissibly infringe upon her First Amendment rights of freedom of speech and association. The parties agree that our decision in *Morial v. Judicial Comm'n*, 565 F.2d 295, 307 (5th Cir. 1977) (en banc), *cert. denied*, 435 U.S. 1013 (1978), elucidates the proper level of scrutiny by which the OIDP policy is to be reviewed: The OIDP must demonstrate a reasonably necessary relationship between its policy and the proffered reason for its adoptionSSmaintaining the efficiency of its office.

Bagneris offers two arguments to support her contention that such a reasonably necessary relationship is lacking. First, she

3

points to the Board's adoption of a grandfather clause exempting the two current employees who already held elected positions to which they were seeking re-election.[1] Notwithstanding the Board's argument that the grandfather clause would not upset the proffered goals of the policy because the protected elected positions and the campaign requirements of the respective positions did not interfere with the employees' ability to perform their OIDP jobs efficiently,[2] Bagneris maintains that the proffered explanation "[c]learly and unequivocally" demonstrates that the "reasons for exempting them reflect the irrationality of the policy." Second, Bagneris contends that the nearly two-month delay between enactment of the policy and its dissemination to the OIDP employees militates against a finding that the policy was rational.

Whether Bagneris disbelieves OIDP's proffered justification for the policy and doubts that its actions were consistent with its justification is beyond the scope of our review. We do not believe that the evidence points "so strongly and overwhelmingly" in favor of Bagneris that a reasonable jury could not have found otherwise. See *Whatley*, 861 F.2d at 839. The jury was entitled to make credibility judgments regarding the veracity of OIDP's proffered

---

[1] One of the employees was a member of the Orleans Parish School Board, and the other was a member of the Republican Executive Committee. It is uncontested that it was not until after its adoption of the policy that the Board became aware that these employees already held public offices.

[2] For example, the Board noted that because the Orleans Parish School Board member worked for OIDP during the afternoons only, his School Board responsibilities and campaign activities would not interfere with his OIDP responsibilities.

4

justifications, and we will not disturb any such inferences. *See Gallo*, 927 F.2d at 820.

## B.

Bagneris next challenges the OIDP policy on equal protection grounds, arguing that the grandfather clause impermissibly creates two classifications of individuals similarly situated who are treated unequallySSincumbents who are grandfathered and non-incumbents who are subject to the policy. We employ the same standard of scrutiny to this derivative equal protection claim as to the First Amendment claim. *See Morial*, 565 F.2d at 304.

Again, constrained by the deferential standard of review afforded jury verdicts, we reject Bagneris's contention that there is no rational basis for concluding that incumbents will not be required to miss more time from work because of campaign activities than will non-incumbents. With respect to the only two individuals to whom the grandfather clause applied, the OIDP presented the jury with ample justification for the group classificationSSi.e., that neither of the positions for which these individuals were seeking re-election required campaigning that would interfere with his OIDP responsibilities. Bagneris was entitled to at trial, and did, attack the veracity of these explanations, but the jury found otherwise, and we are not convinced on review that the evidence

5

presented would preclude a rational jury from so finding.

## C.

Finally, Bagneris asserts that the policy discriminates against her impermissibly on the basis of her sex. That is, because the two employees who were grandfathered were males, Bagneris alleges that the policy, as applied to her, is discriminatory.

Although Bagneris alleges a cause of action for sex discrimination under 42 U.S.C. § 1983, these facts suggest, as do her later citations in the brief, a disparate impact theory of discrimination. We note, however, that a plaintiff bringing a constitutional claim of sex discrimination under § 1983 must demonstrate purposeful discrimination. *See Irby v. Sullivan*, 737 F.2d 1418, 1424 n.7 (5th Cir. 1984). As such, her citations to title VII cases that permit recovery upon a showing of disparate impact, even absent purposeful discrimination, are inapposite. *See International Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977).

Because Bagneris's claim requires proof of purposeful discrimination, and because she does not even allege such, we do not find any evidence of sexual discrimination by OIDP. Rather, the equal protection claim that she alleges is based upon sex merely collapses into the above equal protection claim based upon incumbency. The result, accordingly, must be the same.

6

AFFIRMED.